IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| In Re<br><br>ALBERTSON'S, INC.<br>EMPLOYMENT PRACTICES<br>LITIGATION | )<br>)<br>) Case No. CV-98-1215-S-BLW<br>)<br>) MEMORANDUM DECISION<br>) AND ORDER<br>)<br>) |

## INTRODUCTION

The Court has before it Plaintiff's Motion to Enforce Settlement and the Court's Orders Dated April 11, 2003 and December 22, 2004 (Docket No. 368) and Defendant's Cross-Motion to Enforce Settlement Agreement (Docket No. 376). The Court held oral argument on the motions on November 29, 2005, and now issues the following memorandum decision and order.

## BACKGROUND

The parties entered into a Settlement Agreement ("Agreement") resolving an FLSA action. By the terms of the Agreement, claimants could submit claims for payment, which would be evaluated by a claims administrator. Upon submission, a number of the claims were not valued because they were apparently deficient in some manner.

The parties were directed by this Court to reach agreement on a notice that the claims administrator could send to the claimants who filed deficient claims notifying them of their deficiencies and giving them a deadline for submitting clarifying information.  The parties agreed on all aspects of the notice except as to whether a time limit should be applied for responding to the notice.  Ultimately, this disagreement prevented the parties from reaching a final agreement.

The Webster firm then contacted the claimants and collected the necessary information for most of the deficient claims.  The firm then attempted to submit that information to the claims administrator, but Albertson's directed the claims administrator not to consider the information.  The Webster firm disagreed and filed a motion to enforce the Agreement, seeking an order directing the claims administrator to consider the information and value the claims.

This Court determined that because their right to represent their clients exists side-by-side with the Agreement deficiency provisions, the Webster firm had the right to unilaterally collect and disseminate information to assist their clients.  The Court further found that while Albertson's is concerned that this process may lead to false claims, the attorneys with the Webster firm are officers of the Court subject to the same ethical standards as any attorney engaged in litigation before this Court.  Accordingly, the Court directed the Webster firm to provide the information to the claims administrator within 45 days from the date of the

decision for valuation.  The Court further directed the claims administrator to proceed with the valuation process.  For these claims, the Court held, no further supplementation would be allowed; the claims will stand or fall on the information submitted by the Webster firm within the 45 day deadline.  The Court's Order did not, however, address the issue of whether supplemental information submitted must be under oath.

Thereafter, the Webster firm provided the information to the claims administrator.  Albertson's again requested that the claims administrator not use much of the information based on three main objections.  Those objections frame the issues presented in the pending motions to enforce the Agreement.

## ANALYSIS

I.  **Cross Motions to Enforce Settlement Agreement**

The cross-motions to enforce the Agreement present three issues:  (1) Does the Agreement prohibit the claims administrator from using information in valuing a claim that is not verified under penalty of perjury; (2) Should claims be disqualified where no notice of intent form was filed within the Agreement's 30-day time limit, but an actual claim was filed within that time limit; and (3) Does the Agreement prevent claimants from providing the claims administrator with additional information that enhances or expands upon a claim.

To answer these questions, the Court must interpret the Agreement.  A

settlement agreement in a class action is interpreted as any other contract, under the interpretive rules of the state. *See Armstrong v. Davis*, 275 F.3d 849, 876 (9th Cir. 2001); *see also Waters v. Int'l Precious Metals Corp.*, 237 F.3d 1273, 1277 (11th Cir. 2001) (settlement agreement is a contract, so the Court's analysis is governed by principles of general contract law, and the court gives the agreement's terms their plain and ordinary meaning).

Under Idaho law, when contract terms are unambiguous, the interpretation of the contract's meaning is a question of law. *See City of Chubbuck v. City of Pocatello*, 899 P.2d 411(Idaho 1995). A contract is unambiguous as a matter of law if it is reasonably subject to only one interpretation. *See Navarrete v. City of Caldwell*, 948 P.2d 597 (Idaho Ct.App. 1997). When interpreting unambiguous terms of a contract, the Court ascertains the parties' intent from the language contained in the contract. *See Bilow v. Preco, Inc.*, 966 P.2d 23 (Idaho 1998). A court must construe a contract as a whole and give meaning to all provisions of the writing to the extent possible. *See Selkirk Seed Co. v. State Insurance Fund*, 18 P.3d 956, 959 (Idaho 2000). As outlined below, the Agreement unambiguously answers the three questions presented by the motions.

> **1.     Does the Settlement Agreement prohibit the Claims Administrator from using information in valuing a claim that is not verified under penalty of perjury?**

Section 13.2 of the Agreement outlines the manner for making claims.

Subsection 13.2.1 clearly evidences the parties' intent that claims be made by declaration under penalty of perjury:

> 13.2.1   All claims will be made on a claim form jointly designed by the parties, subject to District Court approval.  Each claimant will be responsible for completing the claim form.  Claims will be made by declaration under penalty of perjury.

(Settlement Agreement, Docket No. 214, Ex. A).  Notably, the Agreement appears to make a distinction between the level of formality required for the "claim" and that required of the "claim form."  The claim itself must be "made by declaration under penalty of perjury," but the remaining parts of the claim form would be "jointly designed by the parties, subject to District Court approval," with no level of formality specified.  This distinction appears to carry forward into Subsection 13.2.2 which discusses certain identifying information and detail to be included in the claim form designed by the parties, but does not specify that such identifying information and detail be submitted under oath.

The parties anticipated that some claim forms would lack sufficient information.  The parties addressed the manner for dealing with such deficient claim forms in subsection 13.2.2.4, which provides as follows:

> 13.2.2.4   The parties will subsequently determine the types of information that, if not included by the claimant on his or her claim form, will result in the claim being discarded and not processed by the Claims Administrator.  Further, the parties will decide upon the circumstances under which the Claims Administrator may, through counsel, contact a claimant in writing and notify him or her of any

> deficiencies in his or her claim form.  Failure to provide such requested additional information in a timely fashion may cause the claim to be denied . . . .

(Settlement Agreement, Docket No. 214, Ex. A).  Again, it is notable that subsection 13.2.2.4 does not state that additional information must be submitted under penalty of perjury.  Rather, it simply outlines the process for supplementing claim forms and states that failure to provide such requested additional information in a timely fashion may cause a claim to be denied.

Reading these sections together, the Court finds that the Agreement requires that "claims" must be made under oath, but does not impose such a requirement for other supporting or supplementing information.   There is a measure of common sense to this interpretation.  The claim itself (i.e., the number of hours that the claimants contend they worked off the clock and the dates of that work) is solely within the claimant's knowledge and therefore not subject to verification by Albertson's.  By comparison, the supporting information (e.g., personal identifying information, corroborating witness information, the store worked in and job held by the claimant) is independently verifiable by Albertson's, either from its own records or from other sources.   Thus, the oath requirement is critical to prevent fraudulent claims, but far less significant in ensuring that the supporting information is accurate.

Thus, the Court concludes that any additional information provided by a

claimant which constitutes a claim, (i.e., the number of off-the-clock hours claimed as well as the days or weeks in which those hours were worked) must be submitted under oath. However, any additional information that simply supports or supplements the claim need not be submitted under oath.

> **2. Should claims be disqualified where no notice of intent form was filed within the Settlement Agreement's 30-day time limit, but where an actual claim was filed within the 30-day time limit?**

Section 13.1 of the Agreement states that potential claimants must follow the requirements in subsections 13.1.1 and 13.1.2. Subsections 13.1.1 and 13.1.2 state as follows:

> 13.1.1. First, individuals must file an intent to file a claim with the Claims Administrator, postmarked within 30 days of receiving the notice of final District Court approval of the Settlement. No detail about the individual's off-the-clock claim will be required on this document; it must simply state that he or she intends to file a claim form as described below in paragraph 13.1.2; and
>
> 13.1.2. Second, individuals must file a claim form with the Claims Administrator, postmarked within 105 days of receiving notice of final District Court approval of the Settlement. Unless the individual opts out of the Rule 23(b)(3) settlement class, failure to file a notice of intent to file a claim or claim form within the prescribed time period will disqualify him or her from seeking monetary relief and his or her state law claims for the time period covered by this Agreement will be extinguished.

(Settlement Agreement, Docket No. 214, Ex. A).

The Agreement provides that two separate notices must be given. However, the form of the notice of intent to file claim is not specified in the Agreement. Indeed, the Agreement provides:

> 13.1.1    No detail about the individual's off-the-clock claim will be required on this document; it must simply state that he or she intends to file a claim form as described below in paragraph 13.1.2.

(Settlement Agreement, Docket No. 214, Ex. A).

Because the form of the notice of intent to file claim is not specified, beyond the requirement that it clearly state the intent to file a claim, the Court finds that the filing of the claim itself is sufficient. Simply stated, there can be no better way to give notice of one's intention to file a claim than to file the claim itself. Since the form of the notice of intent is not prescribed, the filing of a claim is clearly sufficient to satisfy the requirements of the Agreement. Thus a claim shall not be disqualified if a claimant filed an actual claim within 30 days of receiving the notice of final District Court approval of the Settlement, even if a separate notice of intent to file claim was not submitted.

> **3.    Does the Agreement prevent claimants from providing the claims administrator with additional information that enhances or expands upon a claim?**

As noted above, section 13.2.2.4 addresses the process for dealing with deficient claims. In relevant part, it states as follows:

> 13.2.2.4   The parties will subsequently determine the types of information that, if not included by the claimant on his or her claim form, will result in the claim being discarded and not processed by the Claims Administrator.  Further, the parties will decide upon the circumstances under which the Claims Administrator may, through counsel, contact a claimant in writing and notify him or her of any deficiencies in his or her claim form.  Failure to provide such requested additional information in a timely fashion may cause the claim to be denied . . . .

(Settlement Agreement, Docket No. 214, Ex. A).

The parties were unable to agree on a timeline for claimants to respond to a notice of deficiency.  However, the parties did agree on all other aspects of a notice of deficiency.  In an April 29, 2003 letter to the Court, Plaintiff's counsel provided the Court with a deficiency notice form, indicating that the timeline was the only controverted aspect of the notice.  That draft notice to claimant states in relevant part as follows:

> Enclosed is a copy of your previously filed claim form and a new, blank copy of the claim form to enable you to provide the requested information.  Carefully review the instructions on the claim form.  Where you correctly followed these instructions on your original claim form, copy the same information from your original claim form onto this new claim form.  Where you did not correctly follow these instructions on your original claim form, be sure to do so in completing this new claim form.
>
> The purpose of filling out the enclosed blank claim form is to attempt to correct problems with your previously filed claim by providing or clarifying the information

>listed above.  Under no circumstances may the amount of the off-the-clock work that you claim on this new claim form exceed the amount that you claimed or intended to claim on your original claim form.

(Exhibit 16 to Marshall Declaration (Docket Nos. 382-3)).

The Agreement and form clearly evidence the parties' intent that a claimant may not increase his or her claim for off-the-clock work in a subsequent claim form.  An interpretation of the Agreement that allows individuals to use the deficiency process to expand their claims would undermine the Agreement's time limits for submitting claims.  The Court therefore concludes that any supplementation must be limited to an existing claim and cannot expand upon the amount being claimed.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiff's Motion to Enforce Settlement and the Court's Orders Dated April 11, 2003 and December 22, 2004 (Docket No. 368) shall be, and the same is hereby, GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Defendant's Cross-Motion to Enforce Settlement Agreement (Docket No. 376) shall be, and the same is hereby, GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that The Garden City Group, Inc., the claims

administrator in this matter, value the off-the-clock claims and California Grocery Manager claims in a manner consistent with the following:

1. Disregard all additional information submitted by or on behalf of a claimant that constitutes a claim, (i.e., the number of off-the-clock hours, days or weeks worked), which is not submitted under oath. Consider all additional information that simply supports or supplements a claim regardless of whether it was submitted under oath.

2. Consider a claim that was filed by a claimant within 30 days of the claimant's receipt of the notice of final District Court approval of the Settlement even where the claimant did not file a separate notice of intent to file claim.

3. Disregard additional information that creates a new claim or enhances or expands upon the amount of an existing claim.

DATED: **January 4, 2006**

B. LYNN WINMILL
Chief Judge
United States District Court